BENJAMIN FRANKLIN PASS, Plaintiff v. JACQUELINE ODETTE BECK, Defendant

No. COA09-1647

(Filed 1 March 2011)

**Child Custody and Support— modification of custody order— findings of fact support conclusions of law**

The trial court did not err in a child custody case by modifying a custody order to grant joint custody of the child to both parties with primary custody to defendant. As plaintiff did not challenge any of the trial court's findings of fact, they were binding on

**PASS v. BECK**

[210 N.C. App. 192 (2011)]

appeal. Moreover, the findings supported the conclusions of law that there had been a substantial change in circumstances affecting the welfare of the child and that it was in the best interest of the child that defendant be granted primary custody.

Appeal by plaintiff from order entered on or about 1 June 2009 by Judge Melinda H. Crouch in District Court, New Hanover County. Heard in the Court of Appeals 18 August 2010.

*Lea, Rhine & Rosbrugh, PLLC by James W. Lea, III, for plaintiff-appellant.*

*No brief filed for defendant-appellee.*

STROUD, Judge.

The current appeal arises from the trial court's custody order entered on or about 1 June 2009. Plaintiff alleges that the trial court erred in its finding that there had been a substantial change of circumstances affecting the welfare of the minor child justifying a modification of the then-existing custody order between the parties. For the following reasons, we affirm the decision of the trial court.

## I. Background

Plaintiff is the father and defendant the mother of one minor child, Emily.[1] The two have been engaged in this highly contentious case regarding custody of Emily, who was born in 1998. since 2000. Although many temporary custody orders have been entered in the course of litigation, the last permanent custody order in this case was entered on 13 September 2006 ("2006 custody order"). The 2006 custody order granted full custody to plaintiff; barred defendant's visitation with the child; barred defendant from making any accusations of rape against plaintiff; and ordered a cessation of visitation between defendant and child until a full psychological evaluation of defendant had been completed. Further, the order made clear that "[a]ll provisions of previous orders [were to be] replaced by the terms of this Order."

After the end of the 2007 school year, plaintiff moved to Georgia without leave of the trial court.[2] Although prior orders in this case

---

1. Emily is a pseudonym adopted for the protection of the minor child's privacy.

2. Plaintiff claims that he filed a motion with the court for leave to relocate to Georgia and that defendant never objected to the motion. The record does not include this motion, nor does it appear from the record the motion was ever scheduled for a hearing.

had specifically prohibited the parties from relocating from the Wilmington, North Carolina area with the minor child, the 2006 custody order did not prohibit relocation. At some point after entry of the 2006 custody order, defendant began to comply with the provisions of the 2006 custody order which required her to have a psychological evaluation, and Emily and her parents entered into counseling. On or about 25 January 2008, the trial court entered a consent order which allowed for contact between defendant and Emily, encouraged the implementation of a gradual visitation schedule between defendant and Emily, and appointed a therapist for Emily. On 3 March 2008, the parties agreed to allow defendant to visit with Emily for one weekend per month. On 22 May 2008, the Georgia Department of Social Services was called to investigate a charge of child abuse against plaintiff; plaintiff believed that the charge was made by defendant and filed for an *ex parte* order suspending defendant's visitation on 23 June 2008. On 25 August 2008, the trial court entered an order allowing defendant limited telephone contact with Emily. On or about 2 September 2008, in response to defendant's motion for custody and plaintiff's motion to continue suspension of defendant's visitation, the trial court entered an order which transferred primary physical custody of Emily to defendant. On 20 October 2008, plaintiff filed a motion under Rule 59 of the North Carolina Rules of Civil Procedure requesting a new trial on defendant's motion for custody and plaintiff's motion to continue suspension of defendant's visitation based upon the lack of notice to Sam Drewes Ryan, Emily's duly appointed *Guardian Ad Litem*, prior to entry of the September 2008 order. On 12 December 2008, the *Guardian Ad Litem* filed a "Response to Plaintiff's Motion Pursuant to Rule 50 of the North Carolina Rules of Civil Procedure and *Guardian Ad Litem's* Motion Pursuant to Rule 59" in which she asserted that she had not been served with defendant's motion for custody and asked that the trial court set aside its September 2008 order and conduct a hearing in which she could participate. Upon hearing on those motions on 30 January 2009, the trial court granted a rehearing by order of 11 March 2009. The trial court then held a trial on all pending motions regarding custody and visitation on 4, 5, and 6 May 2009 and the *Guardian Ad Litem* was present to participate. Based upon the evidence received at this trial, the trial court issued its June 2009 order granting joint custody of Emily to both parties and primary physical custody to defendant. From this order, plaintiff appeals.

## II. Analysis

Plaintiff asserts that the trial court erred in modifying the its 13 September 2006 custody order to grant joint custody of Emily to both parties with primary custody with defendant. We disagree.

## A. Standard of Review

Our Supreme Court has made clear that appellate courts should begin their review of a "trial court's decision to grant or deny a motion for the modification of an existing child custody order" by examining "the trial court's findings of fact to determine whether they are supported by substantial evidence." *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) (citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted). If an appellate court concludes that the trial court's findings of fact are supported by substantial evidence, then those "findings are conclusive on appeal, even though the evidence might  sustain findings to the contrary." *Pulliam*, 348 N.C. 616, 625, 501 S.E.2d 898, 903 (1998) (citations and quotation marks omitted). However, any findings of fact which are not assigned as error are binding upon this Court.

> Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal. Furthermore, the scope of review on appeal is limited to those issues presented by assignment of error in the record on appeal.

*Koufman v. Koufman*, 330 N.C. 93, 97-98, 408 S.E.2d 729, 731 (1991) (citations omitted).

The "trial court's factual findings [must] support its conclusions of law." *Shipman*, 357 N.C. at 475, 586 S.E.2d at 254. To justify a change in custody, the trial court must first find that there has been a substantial change in circumstances since entry of the prior custody order and that the change has affected the minor child. *Id*. Further, the trial court must find that the proposed change in custody is in the best interests of the minor child. *Id*. If the conclusions of law were properly drawn from the findings of fact, the decision of the trial court will stand. *Id*. In addition, "[i]t is well settled that the trial court is vested with broad discretion in child custody cases. A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so

arbitrary that it could not have been the result of a reasoned decision." *Pass v. Beck*, 156 N.C. App. 597, 600, 577 S.E.2d 180, 182 (2003) (citations and quotations omitted).

Although plaintiff's brief addresses many of the findings of fact in the trial court's order, we first note that plaintiff failed to assign error to any finding of fact. Plaintiff made only five assignments of error: (1) to the "trial court's conclusion of law that Defendant is a fit and proper person to have custody of the minor child;" (2) to the "trial court's award of joint custody to the parties;" (3) to the "trial court's order that the minor child shall reside primarily with the defendant;" (4) to "the trial court's order that Plaintiff shall have periodic visitation with the minor child;" and (5) to "the trial court's conclusion of law that there has been a material and substantial change of circumstances affecting the welfare of the minor child since entry of the Order filed in September 2006." The legal basis stated for each of the assignments of error is the same: that such conclusion, award, or order "is contrary to North Carolina law, and constitutes an abuse of discretion." In his brief, plaintiff has not argued that any finding of fact was not supported by substantial evidence. Actually, plaintiff has not specifically mentioned any of his assignments of error in his brief. N.C.R. App. P. Rule 28(b)(6) provides that an appellant's brief shall contain within the argument as to each question presented for review "a reference to the assignments of error pertinent to the question, identified by their numbers and by the pages at which they appear in the printed record on appeal. Assignments of error not set out in the appellant's brief . . . will be taken as abandoned." N.C.R. App. P. 28(b)(6).

Although plaintiff's brief is in violation of N.C.R. App. P. Rule 28(b)(6) in its failure to identify the assignments of error upon which the argument is based, we find that this nonjurisdictional rule violation is not so substantial as to impair the Court's review, so we will consider plaintiff's argument to the extent it addresses the assignments of error, which are quite limited in their scope. *See Dogwood Development and Management Co., LLC v. White Oak Transport Co., Inc.*, 362 N.C. 191, 198-99, 657 S.E.2d 361, 365-66 (2008) ("The final principal category of default involves a party's failure to comply with one or more of the nonjurisdictional requisites prescribed by the appellate rules. . . . [T]he appellate court faced with a default of this nature possesses discretion in fashioning a remedy to encourage better compliance with the rules. We stress that a party's failure to comply with nonjurisdictional rule requirements normally should not lead

to dismissal of the appeal . . . . Based on the language of Rules 25 and 34, the appellate court may not consider sanctions of any sort when a party's noncompliance with nonjurisdictional requirements of the rules does not rise to the level of a 'substantial failure' or 'gross violation.' ").

Plaintiff presents only one argument on appeal: that "the New Hanover County district court improperly held that there had been a material and substantial change of circumstances affecting the welfare of the minor child since the entry of the Order filed in September 2006 and that such change in circumstances justified modification of said custody Order." Thus, plaintiff contends only that the uncontested findings of fact do not support the trial court's conclusions of law that there was a material and substantial change of circumstances affecting the welfare of the minor child since the entry of the order filed in September 2006 and that such change in circumstances justified modification of said custody order.

Because plaintiff has not challenged any of the trial court's findings of fact, they are binding on appeal, *Koufman*, 330 N.C. at 97-98, 408 S.E.2d at 731, and we must consider only whether the findings of fact supported the conclusions of law. *Shipman*, 357 N.C. at 475, 586 S.E.2d at 254. The trial court in this case made the following specific findings of fact in its 1 June 2009 order:

15) Judge Gorham heard this matter in September, 2006, when the minor child was 7-years old; the minor child is now 10-years, 7-months old.

16) The minor child had resided in the New Hanover County area from her birth until after the end of the 2007 school year.

17) Prior orders of this Court had specifically prohibited the parties from relocating from the Wilmington, NC, area with the minor child, and the Court recognizes that the Order entered herein in September, 2006, is silent with respect to the prohibition of relocation of the parties from the New Hanover County Area.

18) Despite the silence regarding the issue of relocation, Plaintiff chose to relocate to the State of Georgia with the minor child, without obtaining Court approval, thus creating substantial distance between the minor child and her family and friends in the New Hanover County, NC area.

19) Prior orders of this Court and specific admonitions by Judges Corpening and Smith, provided that the minor child was to have no contact with her maternal grandfather, Willis Haynes, and Plaintiff was put on notice that no contact with Willis Haynes was a condition imposed by the Court that, "goes to the heart of protecting the child from potential emotional or physical abuse."

20) The Court recognizes that Judge Gorham's Order entered on September, 2006, is silent with respect to the issue of contact with Willis Haynes; however, the Plaintiff has, by his own admission, intentionally permitted and facilitated contact between the minor child and Willis Haynes, materially affecting the minor child's welfare.

21) The minor child appeared happy, well-adjusted, and she expressed a strong desire to continue living with the Defendant and expressed a strong attachment to her mother and her friends in the Wilmington, NC, area.

22) Both parties harbor extreme hatred for each other and continue to demonstrate such hatred through their actions and such conduct can only serve to cause harm to the minor child. This conduct by both parties calls into question whether either is a fit and proper parent to have custody of the minor child.

23) The Defendant, having previously [sic] ordered not to mention the alleged rape to anyone except her physician, brought her friend, Cathy Iondoli, to the minor child's school and when Defendant left the room, Ms. Iondoli relayed information of the alleged rape to Nick Smith, a school official, therefore indirectly violating this court's order.

24) The testimony of Denise Scearce indicated that the minor child appeared happy residing with her mother, but that her statements to Ms. Scearce regarding the Plaintiff appeared to have been coached. The Court's own observation of the minor child's testimony in chambers likewise leads the Court to believe the testimony of the minor child regarding the Plaintiff to have been coached. The child's testimony indicated that the Plaintiff smokes while she is in the car, that he speeds and drinks while driving, and that he calls her names and threatens to have her mother arrested and sent to jail. Whether or not any of these statements are true is hard to determine given the appearance that the statements appear rehearsed.

PASS v. BECK

[210 N.C. App. 192 (2011)]

25) The testimony of Anne Bertrand demonstrated that she had gained a rapport with the minor child, but it also demonstrated that she has become so prejudiced towards the Plaintiff and the minor child's relationship with him, and so skeptical of the impartiality of the Court, that it would be detrimental to the child to continue counseling with Ms. Bertrand.

26) On the other hand, the minor child was injured while in the Plaintiff's custody when a Great Pyrenees dog, which Plaintiff had purchased for the minor child, bit her on her head. The child's injury required medical treatment at the emergency room where she received staples in her head. The Plaintiff testified, under oath, that he had not told the minor child that her mother was trying to have the dog destroyed after the dog bite. Plaintiff's testimony and his credibility with the court was discredited when Defendant's counsel introduced Plaintiff's recorded conversation with the child telling the child that her mother was trying to have the dog destroyed, exactly what he had just denied under oath. Furthermore, the Court is greatly concerned that Plaintiff in his testimony seemed to place responsibility for the dog bite on the minor child.

27) Testimony of numerous witnesses for Defendant showed that Plaintiff has been belligerent, hostile and verbally abusive upon visitation exchanges in the presence of the minor child.

28) This Court has strongly considered referring both parents' conduct to the New Hanover County Department of Social Services for an investigation into its potential as emotional neglect by both parents.

29) Plaintiff's current residence at an industrial site is not an appropriate place for him to exercise his visitation with the minor child and it is in the child's best interest that Plaintiff secure other living arrangements in order to exercise visitation with the minor child.

30) *The Guardian Ad Litem's* report does not recommend with whom the child should reside since the report raises serious questions of whether one or both parents are trying to alienate the child from the other.

31) Both parents should undergo a full psychological evaluation.

From the foregoing findings of fact the trial court made the conclusions of law *inter alia* that:

3) There has been a material and substantial change in circumstances affecting the welfare of the minor child since the entry of Judge Gorham's September 2006 order and such changes in circumstances justify modification of the custody ordered in Judge Gorham's order.

4) It is in the present best interest of the minor child that she be placed in the joint custody of the parties, with the Defendant having primary custody and the Plaintiff having secondary custody, with visitation occurring as set forth herein.

B. Substantive Analysis

We now turn to the issue of whether the undisputed findings of fact support the trial court's conclusions of law. We find that they do.

1) Substantial change in circumstances

Plaintiff contends that the trial court's findings of fact did not support its conclusion that there had been a substantial change in circumstances affecting Emily's welfare between the September 2006 custody order and the issuance of the order in question. Plaintiff's primary argument is that "the trial court failed . . . to demonstrate a connection between the substantial change in circumstances and the welfare of the child, and how it would be in the child's best interest to modify custody."

As we have noted, the trial court found, *inter alia*, that: plaintiff had moved with Emily to Georgia, "a substantial distance" away from Wilmington, where she had lived since birth; that plaintiff's current place of residence in North Carolina at an "industrial site" was inappropriate for visitation with Emily; that the child had been harmed by a dog while in plaintiff's care; and that plaintiff had facilitated renewed contact with Emily's maternal grandfather, which the trial court had previously determined was not in Emily's best interest. The trial court also noted its doubts regarding plaintiff's credibility and that "Plaintiff has been belligerent, hostile and verbally abusive upon visitation exchanges in the presence of the minor child." All of these findings address changes which occurred since entry of the 2006 custody order. We see no abuse of discretion in the trial court's conclusion that these factors constitute a substantial change in circumstances since the trial court's 2006 order, particularly with

regard to the appropriateness of plaintiff's residence, the ongoing contact between the minor child and with her maternal grandfather, and plaintiff's inappropriate conduct in the presence of the minor child at visitation exchanges.

### 2) Effects of substantial change on Emily

Plaintiff's argument focuses heavily, upon his relocation to Georgia, stressing that if the alleged change is a "discrete set of circumstances," such as the relocation of a custodial parent, the trial court must make specific findings of fact with regard to the effect of the change of circumstances on the minor child. *Carlton v. Carlton*, 145 N.C. App. 252, 262, 549 S.E.2d 916, 923 (2001) (Tyson, J., dissenting) *rev'd per curiam per dissent*, 354 N.C. 561, 557 S.E.2d 529 (2001). Plaintiff also notes that the 2006 custody order did not prohibit him from moving, although prior orders had prohibited relocation with the child. Plaintiff's argument fails for two reasons. First, plaintiff's relocation was by no means the only basis for the trial court's decision. Secondly, the trial court did make findings as to the detrimental effect of the relocation to Georgia on Emily.

The trial court made many findings unrelated to plaintiff's move to Georgia to support the modification of custody. For example, the trial court found that plaintiff allowed the child to have contact with her maternal grandfather; that the child was injured by plaintiff's dog and that plaintiff "seemed to place responsibility for the dog bite on the minor child"; that plaintiff had been "belligerent, hostile and verbally abusive" at visitation exchanges in the presence of the child; that plaintiff's current place of residence in an "industrial site" was inappropriate for visitation with Emily; and that the trial court "strongly considered referring both parents' conduct to the New Hanover County Department of Social Services for an investigation into its potential as emotional neglect by both parents." As the North Carolina Supreme Court has observed, "the effects of the substantial changes in circumstances on the minor child" may be "self-evident, given the nature and cumulative effect of those changes as characterized by the trial court in its findings of fact." *Shipman*, 357 N.C. at 479, 587 S.E.2d at 256. The trial court also made findings regarding the effects of the relocation on the child. Specifically, the trial court found that Emily had lived "in the New Hanover county area from her birth until after the end of the 2007 school year;" that the move to Georgia put a "substantial distance between the minor child and her family and friends in the New Hanover County, NC area;" and that the

child "expressed a strong attachment to her mother and her friends in the Wilmington, NC, area." Taken together, the findings of the trial court fully support its conclusion of a substantial change in circumstances affecting the welfare of the minor child since entry of the 2006 custody order.

3) Emily's best interest

Finally, we turn to the issue of whether the trial court abused its discretion in concluding that modification of custody was in Emily's best interests. We find no abuse of discretion.

The trial court concluded that it was in Emily's best interest "that she be placed in the joint custody of the parties, with the Defendant having primary custody and the Plaintiff having secondary custody . . . ." "Before awarding primary physical custody of a child to a particular party, the trial court must conclude as a matter of law that the award of custody to that particular party will be in the best interest of the child." N.C. Gen. Stat. § 50-13.2(a) (2007). Such a conclusion must be supported by findings of fact. *In re Poole*, 8 N.C. App. 25, 29, 173 S.E.2d 545, 548 (1970). "These findings may concern physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child." *Steele v. Steele*, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468 (1978). "These findings cannot, however, be mere conclusions." *Hall v. Hall*, 188 N.C. App. 527, 532, 655 S.E.2d 901, 905 (2008) (citation and quotation marks omitted).

Plaintiff notes the trial court's negative findings of fact regarding defendant in support of his argument that granting defendant primary physical custody is not in Emily's best interest. In particular, plaintiff notes finding No. 22, that "both parties harbor extreme hatred for each other and continue to demonstrate such hatred through their actions and such conduct can only serve to cause harm to the minor child. This conduct by both parties calls into question whether either is a fit and proper parent to have custody of the minor child." Plaintiff also notes defendant's violations of the prior order and possible coaching of the child as stated in findings of fact No. 23 and 24, quoted above. The negative findings of fact as to both parties could certainly give any judge reason to wonder if it is in Emily's best interest to be in the custody of either defendant or plaintiff.

Considering all of the findings of fact, we find no abuse of discretion. There was much negative evidence regarding both parties, and "we are not in a position to re-weigh the evidence." *Id.* at 533, 655

S.E.2d at 905. The trial court carefully considered both the good and the bad as to each party and, although the trial court stated its concerns about the fitness of both parents, it balanced all of the evidence and determined that Emily would be best served by granting her primary physical custody to defendant.

### III. Conclusion

As the uncontested findings of fact supported the conclusion that there had been a substantial change in circumstances affecting Emily, we conclude the trial court did not err in modifying the custody order to grant joint legal custody to the parties with defendant having primary custody.

AFFIRM.

Judges McGEE and ERVIN concur.