STROUD, Judge.
 

 Blake
 
 [1]
 
 is now almost 16 years old, and this custody battle has lasted most of his life. The primary issue on appeal is whether the trial court should have ordered continuation of reunification counseling efforts, where the trial court found that prior reunification efforts have caused him "intense psychological stress" and that more reunification counseling would "re-traumatize" the child. We remand for entry of an order denying any modification to the prior custody order since no other result is supported by the trial court's unchallenged findings of fact.
 

 Defendant James Marion Chaney ("Father") appeals from the trial court's order modifying an earlier permanent child custody order entered 10 October 2013. On appeal, Father argues that the trial court erred by concluding there was a substantial change in circumstances justifying a modification of the custody order because the findings of fact do not support this conclusion. Because the trial court's ultimate modifications to the custody order are not supported by the court's findings, we vacate and remand to the trial court for entry of a new order.
 

 Facts
 

 This appeal arises in a long and highly contentious custody battle with four prior appeals.
 
 [2]
 
 We will briefly summarize the background of this case and then primarily focus on the facts necessary to address the sole issue raised in the present appeal. Father and plaintiff Kristie Lea Williams ("Mother") were formerly married and are now divorced. They had one child during the course of the marriage, Blake, born in August 2001. Mother was given primary physical legal custody of Blake on 11 June 2002 in a Consent Order for Permanent Custody and Visitation, with Father having secondary physical custody.
 

 The trial court entered an Order for Temporary Modification of Child Custody in January 2006 after Father filed a motion to
 modify, in which the court noted examples of Mother's inappropriate behavior in Blake's presence. The trial court concluded that a substantial change
 of circumstances had occurred justifying modification of the custody order, granted Father temporary physical and legal custody of Blake, and appointed a parenting coordinator. On 3 December 2007, the trial court entered an order for permanent child custody which noted that the parties consented to Father having primary physical custody of Blake. Mother was granted secondary custody, and the order set forth a specific custodial schedule.
 

 In 2009 and 2010, both parties filed several motions and the trial court entered several orders, culminating in another order modifying the custodial schedule entered on 18 August 2010; this order was affirmed in a prior appeal.
 
 See
 

 Williams
 
 ,
 
 213 N.C. App. 425
 
 ,
 
 714 S.E.2d 275
 
 ,
 
 2011 WL 2848846
 
 , 2011 N.C. App. LEXIS 1543.
 

 The series of events leading up to this appeal actually started all the way back in January 2011, when the trial court entered the order which suspended Mother's visitation entirely after finding that she had been evasive about her address. Mother's visitation was suspended until she appeared before the trial court and presented satisfactory evidence of her living situation and her compliance with prior orders to obtain counseling. Specifically, Mother could seek to have her visitation rights reinstated if she provided satisfactory information to the trial court regarding her residence address, living conditions, persons who lived with her, and documentation that she was receiving psychological counseling as ordered in 2010. Mother did not see Blake at all from November 2010 until 2013 other than at one counseling session.
 

 On 30 January 2013, after Mother requested a "Status Hearing," the trial court entered a permanent child custody order concluding that there had been a substantial change in circumstances since prior custody orders entered in 2010. This order was intended to assist in restoring Mother's relationship with Blake, since she had been absent from his life since 2010. The trial court found that
 

 visitation and modification of custody is in the best interests of the minor child in order for the child to establish and maintain a relationship with his mother however, the circumstances require a more limited visitation schedule in order to provide stability and predictability for the minor child in his primary home with his father.
 

 The court granted Mother limited but gradually increasing visitation with Blake under a specific schedule that was laid out in the order and required counseling for Mother and Blake.
 

 Mother filed a "Motion for Contempt, Motion to Review and Enforce Order, and Motion for Attorney's Fees" on 17 April 2013. In her motion, Mother argued that Father had "failed to adhere to the terms of the Court's Order" on numerous occasions and she asked for the trial court to hold Father in contempt. Mother also asked the trial court to review the visitation provisions in the 30 January 2013 order and "if necessary pronounce clarification, guidance and direction to the counselor as to the appropriate role of the counselor in the reunification process." On 23 April 2013, Father filed his own motion to modify custody, asserting that Mother had acted inappropriately in front of the minor child on multiple occasions. He asked that the trial court modify visitation in accordance with the recommendations of the child's counselor and that the court allow Blake to decide if he wanted to visit with Mother.
 

 A series of at least five temporary and supplemental orders followed in response to the parties' competing motions for modification filed in April 2013. Aside from addressing various motions for contempt and other issues not directly relevant to this appeal, these orders generally addressed issues regarding the ongoing reunification counseling efforts and parenting coordinators. But on 10 October 2013, the trial court entered the order which this Court's prior opinion determined was the most recent permanent order subject to modification. Some of the findings of fact from this long and detailed order are instructive regarding the reunification efforts:
 

 40. Although the court is disappointed Mr. Feasel [the child's counselor] refuses to work with the mother toward reunification, the court respects his professional opinion regarding the counseling provided for the child individually and the parties in the joint counseling sessions. The court understands his recommendations were made considering the child's mental health.
 

 41. The mother was ordered to obtain counseling in paragraph 2R of the August 17, 2010 Order of the court. She was ordered again to comply with the order as a means to reinstate her visitation in the Order Suspending Visitation entered on December 17, 2010.
 

 42. There have been two assigned parent coordinators throughout the history of this case. Judge Foster made findings about the most recent parent coordinators concerns in her order dated August 17, 2010. Findings # 40 and # 41 refer to the mother's need for "counseling or therapy.
 

 This is necessary in order for the mother to gain a better perspective on handling her emotions."
 

 43. Following the entry of Judge Foster's court order in January 2013, where the court relied on the opinion of Counselor Connie Zmijewski, the mother sought some individual counseling from the same therapist. Ms. Zmijewski was also qualified as an expert in family counseling. She testified she has counseled the mother about her visits with the child and regarding parenting issues. Ms. Zmijewski encouraged the mother to meet with reunification counselor. She counseled the mother approximately six times. This counseling was prior to [Blake's] reluctance to attend overnight visitation and prior to the mother's efforts to involve law enforcement to obtain physical custody of the child.
 

 44. The parties have been regularly engaged in litigation since this case was transferred from Mecklenburg County. The current Lincoln County file consists of ten separate files and is approximately 14" thick. This court has observed the behavior of the Plaintiff/Mother since 2009 over the course of at least four contested hearings, of which three of those hearings lasted over three days.
 

 45. The court is concerned that the mother has some type of personality disorder preventing her from participating in meaningful therapy to address her behavior and act in the best interest of the child. The court is concerned the mother does not have the capacity to accept any responsibility for the present quality of the relationship between herself and her son, as well as the capacity to acknowledge or respect her son's opinions and beliefs.
 

 46. There has been a substantial change in circumstances from the entry of the prior order in that the child "exhibits emotions that mimic Post Traumatic Stress Disorder". (Defendant's Exhibit # 2) The child has experienced panic attacks, nausea, fear and dread during the days prior to his scheduled visitation.
 

 The court found that Mother had failed to comply with the terms of the court's prior orders and ordered that Mother complete a psychological evaluation. The trial court also suspended Mother's visitation privileges with Blake except that she was allowed to talk to him by telephone
 twice a week on Monday and Thursday evenings and to attend one extracurricular activity a week of her choosing.
 

 On 19 November 2013, after receiving the report from Mother's psychological evaluation, the trial court entered a supplemental order which noted that Mother was not diagnosed with any mental or personality disorders. The November 2013 order concluded that it would be in Blake's best interest for Mother and Father to participate in a "Child and Family Treatment Team" meeting with two therapists who have a relationship with the family. The trial court ordered that all parties participate in therapy for a minimum of four months and then the court would "review the progress of the therapeutic treatment upon notice of either party." The trial court entered an additional order in February 2014 amending the 19 November 2013 supplemental order to substitute a counselor for the Child and Family Treatment Team meeting. On 10 September 2014, the trial court entered another order following a hearing
 in May 2014 regarding the appointment of a replacement counselor, allowing Mother to select a substitute counselor as her individual counselor.
 

 In February 2015, Mother filed a notice of hearing to "review" the trial court's 19 November 2013 order as well as an order filed 10 September 2014 that was initially entered on 20 May 2014 "regarding restoration of the mother/child relationship[.]" After a hearing in March 2015, the trial court entered an order on 18 May 2015 suspending Mother's visitation with Blake except for the two telephone calls a week and one extracurricular activity a week. Mother appealed, and this Court vacated the May 2015 order because it did not include any findings of fact to support a permanent modification of custody or any conclusion that substantial changes in circumstances had occurred and remanded the matter to the trial court for entry of a new order.
 
 See
 

 Williams
 
 , --- N.C. App. ----,
 
 782 S.E.2d 122
 
 ,
 
 2016 WL 409901
 
 , 2016 N.C. App. LEXIS 124.
 

 Following this Court's opinion, without hearing any additional evidence, the trial court entered a new order on 31 May 2016. The court made the following relevant findings:
 

 10. Following the entry of the Permanent Order of January 30, 2013, the child began visiting his mother in January and February, 2013. He expressed his concern with some behaviors of his mother during the first few visits which were concerning to the Court. In March, 2013, as the visits were to progress to overnight, the minor child started complaining about stomach pain or nausea several days before the visits and he would not visit, or the
 child just flat refused to go with [Mother], expressing fear. During this time Justin Feasel, the child's therapist, was meeting with the child to address these issues.
 

 11. Mr. Feasel testified that mother contacted him via email on two occasions asking what he recommended for her to do to help improve her relationship with her son. Mr. Feasel recommended to the mother that she needed to go slow with the reunification process.
 

 12. Rather than following Mr. Feasel's recommendations the mother continued to force the child to visit. The mother's actions continued to impede her relationship with the minor child.
 

 13. Mr. Feasel testified and the Court finds persuasive that since March, 2013 the minor child has experienced fear, anxiety, shaking, an inability to sleep, nausea and anger regarding reunification with his mother.
 

 14. On March 15, 2013, Mr. Feasel wrote a letter recommending that the child's visitation with his mother be limited to day visits.
 

 15. Mr. Feasel had two joint sessions with [Blake] and his mother to address the child's concerns about visitation with his mother. During these sessions the minor child felt that his mother questioned and interrogated him. The child was expecting an apology from his mother; however, [Mother] provided explanations and these explanations were not how the child had perceived the events.
 

 16. During these sessions with the child the mother showed an inability or an unwillingness to accept responsibility, and this inability or unwillingness is an impediment to her child forgiving her.
 

 17. On April 17, 2013, [Mother] filed a motion for contempt alleging the father interfered with the visitation and stating the father should ensure the child exercise the court ordered visitation. The father filed his motion to modify custody on April 23, 2013, requesting relief from the visitation Order based on the counselor's recommendations included in the March 15, 2013 letter.
 

 18. It was during this time the parties exchanged emails about visitation. The father took the child for the exchange; however the child refused to get into his mother's car.
 

 19. On June 23, 2013 the Mother contacted the Lincoln County Sheriff Department to request assistance to enforce the visitation included in the Order. This incident upset the child to the point he was left shaking, crying, and afraid he would be taken from his father.
 

 20. On July 28, 2013, the mother contacted [the] Mecklenburg County Sheriff Department for assistance at the exchange. This incident traumatized the minor child.
 

 21. This Court has previously found that the mother's demeanor and her statements have left her unable or unwilling to consider the child's feelings and emotions and she is preoccupied with blaming the father, the counselor, and at times the child.
 

 22. The mother refuses to admit that any of her behaviors have contributed to the status of her relationship with the child.
 

 23. Cyd McGee, family counselor, is an Intensive Family Preservation specialist. She was authorized by the Court to provide therapeutic services to [Mother] and minor child in an attempt to reunify and begin visitation. Ms. McGee met with [Mother] and the minor child for three sessions in the Fall of 2014.
 

 24. Ms. McGee testified and opined and the Court finds persuasive that [Blake] is a child who has been traumatized and did not want to participate in the family sessions.
 

 25. Ms. McGee testified and opined and the Court finds persuasive that [Blake] felt he had been mistreated by his mother. Specifically, [Blake] recalled the following events that led to his beliefs of being mistreated:
 

 a. His mother had thrown a water bottle at him;
 

 b. During visits with his mother, [Mother] would talk in a negative light about his father ... in front of the minor child; and
 c. During visits with his mother, [Mother's] daughter would make negative comments about [Blake's] father.
 

 26. Ms. McGee testified and opined and the Court finds persuasive that the mother during these counseling sessions was unable to emotionally acknowledge her son's feelings and at times would become defensive. The mother was disconnected from the child's feelings, and she did not respond emotionally, physically, or on any level when the child was expressing his feelings.
 

 27. Ms. McGee testified that throughout the counseling sessions between the mother and the child she observed the child trembling, shaking, developing headaches, and crying. Ms. McGee further testified that it was not in the child's best interest to continue with this reunification process as it was re-traumatizing the child.
 

 28. Ms. McGee testified and opined and the Court finds persuasive that [Blake] is a typical 13 year old teenager who is well-spoken and has stated that he does not want to do this, that he feels forced to continue with the reunification process and that the mother is unable to provide for [Blake's] emotional needs.
 

 29. Ms. McGee concluded that any further counseling sessions would re-traumatize the child.
 

 30. Charlotte Roberts testified as [Mother's] counselor that the mother has been consistent with her therapy, the purpose of which was to improve communication with her son. However, [Mother] did not meet with Ms. Roberts during the months of September and October, 2014, which was during the time the family counseling sessions were taking place.
 

 31. Ms. Roberts testified that at no time has the mother divulged or shared information regarding how the family sessions were going. This is concerning to the Court in light of the testimony of Ms. McGee that the reunification process was failing.
 

 32. According to Mr. Feasel, the reunification process with Ms. McGee in the Fall of 2014 caused [Blake] further intense psychological stress.
 

 33. Mr. Feasel testified that [Blake's] reactions and fears were sincerely held, and not easily overcome.
 

 34. Mr. Feasel testified that he would refuse to be part of any further reunification counseling sessions between [Mother] and minor child because of the harm he feared it would cause the minor child. The effects of the joint sessions as described by Ms. McGee support Mr. Feasel's conclusions. Mr. Feasel has been counseling [Blake] for several years, and the Court
 finds his opinion as to reunification to be well-grounded.
 

 35. Since the January 30, 2013, Order the parties have made two failed attempts of reunification. The child's negative emotional, physical and psychological reactions to his mother since the entry of that Order have been fully vetted and explored by his counselor and are well-grounded. He is a happy and healthy 13-year-old child who is thriving in his life, but for the mother-child relationship.
 

 36. [Mother] is responsible for the fractured relationship between herself and the minor child due to her actions with and around the minor child.
 

 37. There is no evidence before the court that limited telephone contact with his mother or her attendance at his activities have been harmful to the minor child; and therefore the Court finds it is in the child's best interest to have limited telephone contact and to permit the mother's attendance at extracurricular activities as set forth below.
 

 The trial court concluded:
 

 2. There has been a substantial change of circumstances affecting the welfare of the minor child since the entry of the January 30, 2013 Order which have affected the best interest and general welfare of the minor child, and it is now in the best interests of the minor child to modify visitation.
 

 The court then ordered the same limited visitation as had been in place since 10 October 2013-two telephone calls and one extracurricular activity per week-but added a requirement that Father, within 30 days of the entry of the order, must select a licensed psychologist or counselor to counsel with Blake, Mother, and as appropriate, both of them, "to explore the issue of resuming visitation between Mother and child,
 even on a limited basis." Father timely appealed the 31 May 2016 order to this Court.
 

 Discussion
 

 Father's sole argument on appeal is that the trial court erred by concluding that a change in circumstances had occurred justifying a modification of custody and then modifying the order in a way that was not supported by the trial court's findings of fact. Specifically, Father argues:
 

 [T]he trial court erred by ordering [Father] to select a licensed counselor to counsel with the minor child, the mother, and as deemed appropriate, with the mother and the child, to explore the issue of resuming visitation between mother and child because the trial court failed to base its conclusions of law upon sufficient findings of fact.
 

 Under
 
 N.C. Gen. Stat. § 50-13.7
 
 (a) (2015), an order for child custody "may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested[.]" The North Carolina Supreme Court has explained in detail how appellate courts review modification of custody orders:
 

 It is well established in this jurisdiction that a trial court may order a modification of an existing child custody order between two natural parents if the party moving for modification shows a substantial change of circumstances affecting the welfare of the child warrants a change in custody....
 

 As in most child custody proceedings, a trial court's principal objective is to measure whether a change in custody will serve to promote the child's best interests. Therefore, if the trial court does indeed determine that a substantial change in circumstances affects the welfare of the child, it may only modify the existing custody order if it further concludes that a change in custody is in the child's best interests.
 

 The trial court's examination of whether to modify an existing child custody order is twofold. The trial court must determine whether there was a change in circumstances and then must examine whether such a change affected the minor child. If the trial court concludes either that a substantial change has not occurred or that a substantial change did occur but that it did not affect
 the minor child's welfare, the court's examination ends, and no modification can be ordered. If, however, the trial court determines that there has been a substantial change in circumstances and
 that the change affected the welfare of the child, the court must then examine whether a change in custody is in the child's best interests. If the trial court concludes that modification is in the child's best interests, only then may the court order a modification of the original custody order.
 

 When reviewing a trial court's decision to grant or deny the modification of an existing child custody order, the appellate courts must examine the trial court's findings of fact to determine whether they are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
 

 ....
 

 In addition to evaluating whether a trial court's findings of fact are supported by substantial evidence, this Court must determine if the trial court's factual findings support its conclusions of law. With regard to the trial court's conclusions of law, our case law indicates that the trial court must determine whether there has been a substantial change in circumstances and whether that change affected the minor child. Upon concluding that such a change affects the child's welfare, the trial court must then decide whether a modification of custody was in the child's best interests. If we determine that the trial court has properly concluded that the facts show that a substantial change of circumstances has affected the welfare of the minor child and that modification was in the child's best interests, we will defer to the trial court's judgment and not disturb its decision to modify an existing custody agreement.
 

 Shipman v. Shipman
 
 ,
 
 357 N.C. 471
 
 , 473-75,
 
 586 S.E.2d 250
 
 , 253-54 (2003) (citations and quotation marks omitted).
 

 Father does not dispute any of the trial court's findings of fact in this case, but rather argues that the findings fail to support the conclusions of law. "Because plaintiff has not challenged any of the trial court's findings of fact, they are binding on appeal, and we must consider only whether
 the findings of fact supported the conclusions of law."
 
 Pass v. Beck
 
 ,
 
 210 N.C. App. 192
 
 , 197,
 
 708 S.E.2d 87
 
 , 91 (2011) (citations omitted).
 

 We will first note that one of the challenging parts of this case is simply determining which order is the "prior order" which is being modified, since the court is required to find a substantial change of circumstances from that particular date and order until the time of the new order. Since so many motions were filed and so many orders and "supplemental orders" were entered, it is difficult to trace back to the starting point. Both parties filed motions for modification of custody in April 2013. The 10 October 2013 order contained extensive findings of fact, including the required findings of fact and conclusions of law to support modification of the custodial schedule. We also recognize that this Court's prior opinion held that the 10 October 2013 order was the last permanent order subject to modification:
 

 On remand, the trial court should enter findings based on the preponderance of the evidence and conclusions of law supported by its findings. If the trial court modifies the custody order of 10 October 2013 or its associated supplemental order of 19 November 2013, its findings must support an ultimate finding that there has been a substantial change of circumstances that affects the welfare of the child.
 

 Williams
 
 , --- N.C. App. ----,
 
 782 S.E.2d 122
 
 ,
 
 2016 WL 409901
 
 at *6, 2016 N.C. App. LEXIS 124 at *15.
 

 Our record does not include any motion for modification of custody filed after the 10 October 2013 order, but it appears that this chain of orders relates back to the April 2013 motions.
 
 [3]
 
 In February 2015, Mother did file a request for "review" of the prior orders regarding addressing restoration of her relationship with the child, and this could generously be construed as a motion for modification of custody. In any event, both this panel and the trial court are bound by this Court's prior opinion, so we will address
 the modification order on appeal based upon the October and November 2013 orders.
 
 See, e.g.,
 

 Lueallen v. Lueallen
 
 , --- N.C. App. ----, ----,
 
 790 S.E.2d 690
 
 , 696 (2016) (concluding order that was arguably temporary could nevertheless be addressed where "another panel of this Court ha[d] previously ordered the relevant provisions of the ... order
 stayed" and holding that since this Court is "bound by that ruling, we will address Mother's appeal. In addition if we were to dismiss Mother's appeal, it would only add to the delay in establishing a final custodial schedule, much to [the minor child's] detriment." (Citation omitted)).
 

 We agree with Father that the trial court's conclusions of law-and in particular the modification which requires even more counseling and reunification efforts-are not supported by the court's findings of fact or conclusions of law. We are perplexed by how the trial court ultimately reached the end result of requiring
 
 additional
 
 counseling after finding that prior efforts had failed and additional reunification counseling would "re-traumatize" him. The court's findings, which are not challenged on appeal, uniformly show that Mother has not made improvements in years of prior counseling attempts and that Mother and Blake's relationship has deteriorated even further due to Mother's attitude, behavior, and general unwillingness to accept responsibility for the state of her relationship with her son. Most relevant to the requirement of additional counseling, the trial court found that "any further counseling sessions would re-traumatize the child"; that "the reunification process with Ms. McGee in the Fall of 2014 caused [Blake] further intense psychological stress"; that "the minor child has experienced fear, anxiety, shaking, an inability to sleep, nausea and anger regarding reunification with his mother"; and that "Ms. McGee testified and opined and the Court finds persuasive that [Blake] is a child who has been traumatized and did not want to participate in the family sessions." Despite these findings that the reunification attempts had traumatized the child and that further counseling would re-traumatize him, the trial court ordered
 
 more
 
 counseling aimed at reunification. The only changes in circumstances since the October 2013 and November 2013 orders which were found by the trial court were negative changes-failed efforts at counseling, the child's increased anxiety, and mother's continued failure to improve her behavior. The trial court then concluded that circumstances had changed substantially to support modifying the custody order and that modification would be in the "best interests of the minor child[,]" but, inexplicably, the only substantive modification from the prior order was to add in a requirement that Father find a new counselor for the child and Mother so that the issue of revisiting Mother's visitation privileges with the child could be evaluated further. Specifically, the trial court ordered, in relevant part, that:
 

 3. [Father] shall, within 30 days of the entry of this Order, select a licensed Counselor/Psychologist to counsel with the minor child, with the Mother, and, as deemed
 appropriate, with Mother and minor child, to explore the issue of resuming visitation between Mother and child, even on a limited basis.
 

 4. Any joint sessions, or other direct contact between Mother and minor child, shall be as directed by the licensed Counselor/Psychologist, as he/she determines such contact to be not detrimental to the mental and emotional well-being of the minor child.
 

 5. Any failure of the Plaintiff/Mother to cooperate with, or promptly pay for the services of, the licensed Counselor/Psychologist, will be taken into consideration by the Court in future proceedings, and could subject her to the contempt powers of the Court.
 

 6. [Father] shall take the steps reasonably necessary to choose the counselor, provide the contact information to [Mother's] Attorney, and to ensure the minor child's attendance and participation in scheduled sessions. Any failure of the Defendant/Father to comply with these directives will be taken into consideration by the Court in future proceedings, and could subject him to the contempt powers of the Court.
 

 These requirements seem to conflict with everything else in the court's order up to this point.
 

 The trial court may have misinterpreted this Court's prior opinion as directing the court to conclude that a substantial change had occurred supporting modification
 
 in Mother's favor
 
 , but that is not what our prior opinion stated. Our previous opinion simply held:
 

 In sum, the trial court's custody order must be vacated because (1) the trial court failed to make conclusions of law; (2) the order modified custody without first finding that there had been a substantial change of circumstances, and (3) the order denied [Mother] any visitation with the child without the findings required to support such an order....
 

 .... On remand, the trial court should enter findings based on the preponderance of the evidence and conclusions of law supported by its findings. If the trial court modifies the custody order of 10 October 2013 or its associated supplemental order of 19 November 2013,
 its findings must support an ultimate finding that there has been a substantial change of circumstances that affects the welfare of the child. If the trial court denies [Mother] reasonable visitation its evidentiary findings should support an ultimate finding that [Mother] is either unfit to visit with the child or that visitation with [Mother] is not in the child's best interest.
 

 Williams
 
 , --- N.C. App. ----,
 
 782 S.E.2d 122
 
 ,
 
 2016 WL 409901
 
 , at *6, 2016 N.C. App. LEXIS 124, at *14-15. In other words, the trial court was free to make additional findings of fact and depending upon those facts, to do any of the following on remand: (1) conclude that there had been no substantial change of circumstances which would justify modifying Mother's limited contact as set forth in the October 2013 order in
 
 any
 
 way, either by increasing it or decreasing it; (2) conclude that there had been a substantial change of circumstances which justifies modification of custody, but enter an order decreasing Mother's contact with the child, if this would be in the child's best interest; or (3) modify custody in some other way, depending upon the new findings of fact and upon conclusions of law to support modification and demonstrating that the particular modification ordered would be in the child's best interest.
 

 Instead, on remand, the trial court made the findings of fact as discussed above and the following conclusion of law:
 

 2. There has been a substantial change of circumstances affecting the welfare of the minor child since the entry of the January 30, 2013 Order which have affected the best interest and general welfare of the minor child, and it is now in the best interests of the minor child to modify visitation.
 

 Based upon the trial court's findings, we are unable to discern any changes of circumstances since the October and November 2013 orders which would justify increasing Mother's contact with Blake in any way. The findings of fact also do not show how another attempt at counseling and reunification could possibly be in the child's best interest. Based upon the trial court's finding that there was no showing that the telephone contact and once-weekly attendance of an extracurricular event had been harmful to the child, it would seem logical that the trial court would have simply concluded that there was no reason to modify the prior order.
 

 Since the findings of fact are not challenged on appeal and since only one conclusion of law can logically follow from these findings, we
 vacate only the trial court's conclusion of law and decretal provisions noted above of the 31 May 2016 order. The findings of fact are affirmed. On remand, the trial court shall enter an order with the same findings of fact as in the order on appeal and a conclusion of law that there has been no showing of a substantial change in circumstances which would justify modification of Mother's limited visitation as set forth in the 10 October 2013 order, nor would any modification be in Blake's best interests.
 
 See, e.g.,
 

 Pulliam v. Smith
 
 ,
 
 348 N.C. 616
 
 , 619,
 
 501 S.E.2d 898
 
 , 899 (1998) ("The welfare of the child has always been the polar star which guides the courts in awarding custody."). There is no factual or legal basis to order more reunification counseling.
 

 Conclusion
 

 Accordingly, we hold that the trial court's second conclusion of law is not supported by
 its findings and that the requirement of additional counseling in particular is not supported by either the findings of fact or the conclusion of law. We therefore vacate
 
 only
 
 the second conclusion of law and decretal provisions 3, 4, 5, and 6 of the order on appeal. The findings of fact in the 31 May 2016 order were not challenged on appeal and we affirm these findings. We remand this matter for entry of an order which incorporates these same findings of fact and denies modification of the 10 October 2013 order, as described above.
 

 The 2013 order was entered a long time ago, and much has happened and many orders have been entered since 2013. To assist the parties in understanding which order provisions the parties need to follow after this remand, the trial court's new order on remand should also simply note that Mother already completed the psychological evaluation as ordered in the 10 October 2013 order; and that the supplemental provisions of the 19 November 2013 order regarding the Child and Family Treatment Team and counseling have also been completed. Since there has been no substantial change of circumstances justifying modification of the October 2013 order, Mother's visitation upon remand shall be exactly the same as set forth in the 10 October 2013 order in decretal provision 1, subsections (a) and (b); these are the very same provisions as set forth in decretal sections 1 and 2 of the order on appeal, and we have not vacated these two decretal provisions since they are unchanged from the 10 October 2013 order.
 

 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 

 Chief Judge McGEE and Judge TYSON concur.
 

 We use a pseudonym to protect the identity of the minor child.
 

 Williams v. Chaney
 
 ,
 
 212 N.C. App. 694
 
 ,
 
 718 S.E.2d 737
 
 ,
 
 2011 WL 2448950
 
 , 2011 N.C. App. LEXIS 1246 (2011) (unpublished);
 
 Williams v. Chaney
 
 ,
 
 213 N.C. App. 425
 
 ,
 
 714 S.E.2d 275
 
 ,
 
 2011 WL 2848846
 
 , 2011 N.C. App. LEXIS 1543 (2011) (unpublished);
 
 Williams v. Chaney
 
 , --- N.C. App. ----,
 
 782 S.E.2d 122
 
 ,
 
 2016 WL 409901
 
 , 2016 N.C. App. LEXIS 124 (2016) (unpublished);
 
 Williams v. Chaney
 
 , --- N.C. App. ----,
 
 792 S.E.2d 207
 
 (2016).
 

 We also note that neither party was represented by counsel in either this appeal or the last. Only Father filed a brief in this appeal. We are not entirely confident that either the current record on appeal or the record for the last appeal is complete, but as best we can tell based upon the arguments of Father, it is sufficient to address the issue raised in this appeal.